# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| JABARI BROWN, Reg. No. K69370, | ) |
| Petitioner, | ) |
| v. | ) Case No. 16 C 11653 |
| JASON C. GARNETT, Warden, | ) |
| Big Muddy River Corr. Ctr., | ) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

Jabari Brown ("Brown") has filed a 28 U.S.C. § 2254 ("Section 2254") Amended Petition for Writ of Habeas Corpus ("Petition"), seeking to challenge his conviction for murder and the resultant 45 year sentence. In accordance with Rules 4 and 5 of the Rules Governing Section 2254 Cases in the United States District Courts ("Section 2254 Rules"), this Court promptly reviewed the Petition and its attachments, the response filed by Big Muddy River Correctional Center Warden Jason Garnett and Brown's Reply to that response. For the reasons stated in this memorandum opinion and order, Brown's Petition is denied and this action is dismissed.

## Procedural History in the State Courts

Section 2254(d) makes the state courts' findings of fact presumptively correct in any federal habeas proceeding. In this instance the factual background stated in the Illinois Appellate Court's unpublished opinion dealing with Brown's state court post-conviction petition (People v. Brown, 2016 IL App. (1st) 130533-U, appeal denied 60 N.E.3d 875 (Ill. 2016)) reflects the record fully and fairly. Because (as will be seen) Brown's federal Petition founders on legal grounds rather than on claimed flaws in that opinion's factual presentation, there is no need to

recapitulate that factual recital here. Instead this opinion turns to the multiyear history of Brown's travels (and travails) through judicial channels.

Brown was charged with two counts of first-degree murder in connection with the September 2, 1995 drive-by shooting death of Sharon Edgerton ("Edgerton"). After the close of evidence and closing arguments in a bench trial, the trial court found Brown guilty and sentenced him to 45 years' imprisonment. Brown filed a direct appeal, where his conviction was affirmed (People v. Brown, 312 Ill.App.3d 1201, 769 N.E.2d 68 (1st Dist. 2000)). Brown then petitioned for leave to appeal to the Illinois Supreme Court, and that was denied. On March 26, 2001 Brown filed a pro se post-conviction petition raising many allegations of trial counsel's ineffectiveness. The trial court dismissed that petition, but the dismissal was reversed on appeal and the case was remanded (People v. Brown, 336 Ill. App. 3d 711, 784 N.E.2d 296 (1st Dist. 2002)).

On remand Brown's new private counsel filed three supplemental petitions, one of which stated that Brown no longer wanted to pursue his original claims. Brown raised four claims in his new post-conviction petition, all of which were dismissed after argument on January 10, 2013. Brown then appealed, arguing that two of the claims should not have been dismissed: (1) that the State presented perjured testimony of witness Marvin Gilmore ("Gilmore") that he was no longer in a gang, and (2) that the State failed to disclose evidence that Gilmore and his live-in girlfriend Monee Washington ("Washington," also a witness) were being targeted by members of the Four Corner Hustlers. In the Illinois Appellate Court opinion cited at the outset of this section, the court found both claims to lack the materiality necessary under Brady v. Maryland, 373 U.S. 83 (1963) to have possibly changed Brown's original guilty verdict. Brown again filed a petition for leave to appeal, and once again the Illinois Supreme Court denied it.

## Procedural History in This District Court

On December 27, 2016 Brown filed the Petition pro se, accompanied by a motion to secure attorney representation.[1] There were three main contentions in the Petition:

1. that the state court inappropriately used the Brady standard, when it should have used the standard under Napue v. People of State of Ill., 360 U.S. 264 (1959);

2. that the state court incorrectly ruled on the claim of Gilmore's continued gang affiliation; and

3. that it also incorrectly ruled on the claim of the Four Corner Hustlers targeting Gilmore and Washington around the time of the shooting.

In response to the Petition, counsel for respondent Warden Garnett asserted that the second claim was procedurally defaulted and that all three claims lacked merit. Brown then made a proper request for counsel and this Court designated attorney William O. Walters, who filed a reply on Brown's behalf seeking to reject every argument made by Garnett in his response.

## Procedural Framework

Before any federal court can address the merits of a Section 2254 petition, the petitioner must have both exhausted state court remedies and avoided any procedural defaults (Bocian v. Godinez, 101 F.3d 465, 468 (7th Cir. 1996)). Claims are exhausted "by either (a) providing the highest court in the state a fair opportunity to consider the constitutional issue, or (b) having no

---

[1] Both because Brown had failed to complete the form for attorney representation properly and in light of his well-researched and well-presented Petition, this Court denied that motion at the outset.

further available means for pursuing a review of one's conviction in state court" (Wallace v. Duckworth, 778 F.2d 1215, 1219 (7th Cir. 1985) (per curiam)). Because it is clear from the procedural history here that Brown has satisfied the second of those alternatives, this opinion turns to the separate doctrine of procedural default.

While "failure to exhaust . . . refers only to issues that have not been presented to the state court but still may be presented" (Resnover v. Pearson, 965 F.2d 1453, 1458 (7th Cir. 1992)), procedural default occurs either (1) when a state court has declined to address a prisoner's federal claims because the prisoner failed to meet an independent and adequate state procedural requirement (Coleman v. Thompson, 501 U.S. 722, 729-30 (1991)) or (2) when a claim could have been but was not brought before a state court and can no longer be asserted in that forum (Resnover, 965 F.2d at 1458). After being barred on procedural default grounds, a claim will not be cognizable in a federal habeas proceeding unless the petitioner can clear one of two hurdles established by Coleman, 501 U.S. at 750:

> We now make it explicit: In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

So it is necessary to determine at the outset whether Brown's second claim is procedurally defaulted and whether he may avoid that bar to his claims by demonstrating either cause and prejudice or a fundamental miscarriage of justice.

If a claim manages to survive the intricate procedural obstacles that may preclude relief as a threshold matter, it must then satisfy Section 2254(d)'s stringent standard for granting habeas claims that the state courts have considered and rejected on their merits:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Williams v. Taylor, 529 U.S. 362 (2000) has provided extensive input on the application of Section 2254(d) -- and see also Washington v. Smith, 219 F.3d 620, 627-28 (7th Cir. 2000) in that respect -- a subject to which this Court will return in its analysis of the first and third claims.

Brown has not challenged any determination of the facts as made by the Illinois courts. Instead he contends that he is the victim of several unreasonable applications of the both the law and those facts. Section 2254(d) provides only limited review of state decisions in that regard, for its "'unreasonableness' standard allows the state court's decision to stand if it is one of several equally plausible outcomes" (Hall v. Washington, 106 F.3d 742, 749 (7th Cir. 1997)).

This opinion turns now to consideration, through the necessary analytical filters, of each of the grounds that Brown now advances as entitling him to federal habeas relief. And as stated earlier, this opinion finds that the record calls for dismissal of all three.

## Procedural Default of the Second Claim

Brown's claim for habeas relief on the basis of the State failing to disclose Gilmore's continued gang affiliation was procedurally defaulted because it was rejected on independent and adequate state grounds (see, e.g., Sturgeon v. Chandler, 552 F.3d 604, 611 (7th Cir. 2009)). In addition to rejecting the claim on its merits, the state court found that the claim failed separately

- 5 -

and sufficiently because defendant failed to comply with the Illinois Post-Conviction Hearing Act (725 ILCS 5/122-2 (West 2000)). That section requires that the petition have attached "affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached" (id.). Brown failed to attach any affidavits of his trial counsel to support the claims of never having received the police reports revealing Gilmore's continued gang affiliation -- a clear violation of the rules and an independent and adequate state-law-based reason for denying the claim.

## **Applicability of Procedural Default Exceptions**

That is not necessarily the end of the matter, for there are exceptions to the procedural default rule that might potentially allow Brown's second claim to stand. As stated earlier, Coleman's first potential exception to a procedural bar requires Brown to show both that he had cause for the default and that he suffered prejudice from the claimed constitutional violation. While Brown is correct to point out that the facts in Coleman are different from those here, both involve failures by attorneys (in Coleman it was in filing too late and here it was in failing to submit proper affidavits outlining evidence received) that fall short of an ineffective assistance of counsel Sixth Amendment violation. Therefore the cause is equally inadequate for finding the first exception to a procedural default.

Nor has Brown shown that he would suffer from a "fundamental miscarriage of justice" because of a failure to entertain his claim. That second Coleman exception is limited to the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent" (Schlup v. Delo, 513 U.S. 298, 321 (1995)). Even if this Court were to assume that Gilmore lied about no longer being involved with the gang, that is not enough to meet the Schlup standard of Brown's probable innocence. It is a total non sequitur to

link the evidence of Gilmore's asserted gang affiliation with a purely hypothetical change in the outcome of the case. Gilmore was impeached once during his testimony and yet Brown was still found guilty. Another purely tangential impeachment would not even arguably have led to a finding of Brown's innocence.

In sum, Brown has not demonstrated either cause and prejudice or a fundamental miscarriage of justice to enable him to escape procedural default (see <u>Perruquet v. Briley</u>, 390 F.3d 505, 514-15 (7th Cir. 2004)). That second claim is thus denied without any need to analyze any arguable due process aspect.

## **Merits of the First and Third Claims**

That leaves for consideration only Brown's claims that the state court applied the wrong standard in its rulings and that the State violated <u>Brady</u> by failing to disclose that Gilmore and Washington were being targeted by the Four Corner Hustlers around the time of the shooting. And those contentions, which seek to relitigate claims adjudicated by the state courts on the merits, must meet one of the two earlier-quoted strict requirements imposed by Congress in Section 2254(d). To come within the "contrary to" branch of the first alternative, <u>Conner v. McBride</u>, 375 F.3d 643, 649 (7th Cir. 2004) has cited the Supreme Court's <u>Williams</u> case to summarize the test:

> First, a state court decision is "contrary to" federal law if the state court either incorrectly laid out governing Supreme Court precedent, or, having identified the correct rule of law, decided a case differently than a materially factually indistinguishable Supreme Court case.

As for the "unreasonable application" requirement, <u>Woods v. McBride</u>, 430 F.3d 813, 817 (7th Cir. 2005) (with a citation to <u>Williams</u>, the source of the internal quotation, omitted) states the demanding nature of the statutory test:

In the habeas context, an "unreasonable" application is more than simply an "incorrect" application, so "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Rather, in order to trigger grant of the writ, the state-court decision must be both incorrect and unreasonable.

Indeed, the Supreme Court itself has more recently reemphasized the stringency of the statutory standards. Here is what <u>Burt v. Titlow</u>, 134 S. Ct. 10, 16 (2013)(citations omitted) says as to both Section 2254(d)(1) and Section 2254(d)(2):

> AEDPA requires "a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." "If this standard is difficult to meet" -- and it is -- "that is because it was meant to be." We will not lightly conclude that a State's criminal justice system has experienced the "extreme malfunctio[n]" for which federal habeas relief is the remedy.

In this instance Brown's first claim fails. As Brown argues, the state court used the <u>Brady</u> standard in evaluating the claim that the State knowingly used perjury and did not directly cite the more lenient standard introduced in <u>Napue</u>. However, Brown also had a <u>Brady</u> claim under the same facts, so the state court was not using an "unreasonable" or "incorrect" application of the <u>Brady</u> standard.

In addition, the failure to employ the standard laid out in <u>Napue</u> did not make the state court's overall finding so lacking in justification that there was an error beyond any possibility for fairminded disagreement. Instead the state court's analysis and conclusions were sufficient to satisfy either the <u>Brady</u> or <u>Napue</u> standard. Under <u>Napue</u> a petitioner must show that "(1) the prosecution presented false testimony or failed to disclose that false testimony was used to convict, (2) the prosecution knew or should have known that the testimony was false, and (3) there is a reasonable likelihood that the testimony could have affected the jury's judgment" (<u>Griffin v. Pierce</u>, 622 F.3d 831, 842 (7th Cir. 2010)). In this case there was a bench trial and no

jury, but there must still have been a reasonable likelihood that the testimony affected the judgment of the case.

As the state court pointed out, (1) there was no evidence of intra-gang animosity that would make Gilmore's continued gang status relevant to Brown's guilt, (2) there was ample evidence of Brown's guilt outside of Gilmore's testimony and (3) any impeachment regarding Gilmore's statements of ongoing membership in the Blackstones would not have undermined Gilmore's corroborated descriptions of Brown and the vehicle. Indeed, evidence had already been introduced challenging Gilmore's identification of Brown, and that was not enough to impede his conviction. And the final analytical nail in the coffin of Brown's Napue-based argument is the fact that the state court used that case's "reasonable probability" language in setting out its test for materiality of the evidence (Brown, 2016 IL App (1st) 130533-U, ¶ 51). So the absence of a reference to Napue by name was really irrelevant, for the state court's language clearly showed that it found no reasonable likelihood of the testimony affecting the final judgment.

Brown's third claim also fails, although for slightly different reasons. Here this Court must examine whether the Illinois Appellate Court reasonably applied Brady in evaluating the argument that the State failed to disclose that Gilmore and Washington were being targeted by the Four Corner Hustlers around the time of the shooting. Brown argues that such disclosure was needed to show a member of that gang was trying to shoot them and not Edgerton. Brown tries to stretch that hypothesis even farther by pointing to a different suspect, Jose Carrasco, who fits a description similar to the original one given by Washington to the police. As Brown would have it, that would provide a motive that was not present when he was being convicted.

But the state court did not buy Brown's arguments. For one thing, it found no connection between two members of the Four Corner Hustlers gang throwing bricks through Gilmore's and Washington's window and a previous animosity between them. And for another, it also rejected any argument based on Washington's alleged description of the suspect as "light-complected," pointing instead to Washington's having described the car's <u>driver</u> that way, while consistently testifying that the shooter was in the <u>passenger</u> seat.

It must be remembered that the standard for a <u>Brady</u> violation is to determine whether the undisclosed evidence "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict" (<u>Kyles v. Whitley</u>, 514 U.S. 419, 435 (1995)). Here the state court correctly applied that standard in dismissing Brown's claim, pointing out that the one incident cited (the brick throwing) happened one month later and was not evidence of animosity between the gang itself and Gilmore and Washington -- instead it was just an isolated incident involving two people belonging to a different gang. That incident, if presented at trial (even ignoring its questionable admissibility), would not have undermined the identification of Brown, nor would it have been relevant to providing an alternative suspect and motive for the shooting of Edgerton. Most critically in <u>Brady</u> terms, it cannot be said that Brown contentions reasonably "put the whole case in such a different light as to undermine confidence in the verdict."

## **<u>Conclusion</u>**

In sum, none of Brown's contentions has survived analysis. This Court determines that no evidentiary hearing is required (see Section 2254 Rule 8(a)) and that "it plainly appears" that Brown "is not entitled to relief in the district court" (Section 2254 Rule 4). Hence both the Petition and this action must be and are dismissed, and this Court denies a certificate of

appealability (Section 2254 Rule 11(a)). Brown may seek such a certificate from the Court of Appeals under Fed. R. App. P. 22.

_____
Milton I. Shadur
Senior United States District Judge

Date:  August 28, 2017